1 | James C. Shah (SBN 260435)
  | Email: jcshah@millershah.com
2 | Kolin C. Tang (SBN 279834)
  | Email: kctang@millershah.com
3 | **MILLER SHAH LLP**
4 | 8730 Wilshire Blvd., Suite 400
5 | Los Angeles, CA 90211
  | Telephone: (866) 540-5505
6 | Facsimile: (866) 300-7367
7 |
8 | Christopher E. Roberts (phv forthcoming)
  | Email: CRoberts@butschroberts.com
9 | **BUTSCH ROBERTS & ASSOCIATES LLC**
10 | 7777 Bonhomme Avenue, Suite 1300
   | Clayton, Missouri 63105
11 | Telephone: (314) 863-5700
12 | *Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| KIMBERLY HUDSON, individually and on behalf of others similarly situated, | Case No.: 2:25-cv-03454 |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CITY FIRST MORTGAGE SERVICES, L.L.C., | |
| Defendant. | |

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Kimberly Hudson ("Plaintiff" or "Hudson"), individually, and on behalf of all others similarly situated, through her undersigned counsel, and for her Class Action Complaint against Defendant, City First Mortgage Services, L.L.C. ("Defendant" or "City First Mortgage"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1.  The receipt of unwanted robocalls has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is about stopping incessant robocallers, like Defendant, from placing robocalls to the cell phones of Hudson and likely thousands of other persons without first obtaining the proper consent to place such calls.

2.  Hudson brings this class action lawsuit against Defendant for improperly placing prerecorded voice calls, i.e., robocalls, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3.  Hudson also brings this class action lawsuit against Defendant for improperly placing these calls to persons whose phone numbers were registered on the National Do-Not-Call Registry ("DNC List"), in violation of the TCPA, U.S.C. § 227 *et seq.*, and the TCPA's corresponding regulations.

4.  In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5.  The TCPA affords protections to people who have not provided "prior express written consent" to received prerecorded and/or artificial voice calls on their cell phones. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a). The penalty for

violating the TCPA is 500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(3).

6. The TCPA also affords protections for people who request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5).

7. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Hudson, frequently face. For example, in 2024 alone, approximately 52.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 15, 2025).

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's*

1  *Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

12. This Court has personal jurisdiction over Defendant because it transacts business in California, directly markets its products and services in California, and sells various products and services in California, and for the reasons otherwise set forth in this Complaint.

13. Defendant has continuous and systematic contacts with the State of California.

14. Hudson was (and is) a resident and citizen of Los Angeles, California at all times relevant to this Complaint.

15. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

16. The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## PARTIES

17. At all times relevant to this Complaint, Hudson was, and is still, the owner of a cell phone, with a phone number of 323-XXX-1729.

18. Hudson's phone number was registered on the DNC List on September 1, 2003, for the purpose of being left alone by telemarketers.

19. The monthly bill associated with Hudson's phone number is issued in her name, and not in the name of a business.

20. Hudson uses her phone primarily for personal purposes, such as

communicating with friends and family members.

21. Defendant, City First Mortgage, is a Utah limited liability company with its principal place of business in Utah. Defendant is registered with the California Secretary of State as a foreign limited liability company, and at all times relevant to this Complaint has been authorized to transact business in California and throughout the United States.

22. Defendant's business registration with the California Secretary of State states that Defendant's "Type of Business" is "Residential Mortgage Lending."

23. Defendant is and has at all times material to this Complaint been licensed in the State of California by the Department of Financial Protection & Innovation as a "California Residential Mortgage Lender."

24. Defendant's website is www.city1st.com.

25. Defendant offers a variety of mortgage and mortgage-related products.

26. Defendant's website has a question-and-answer section that provides answers to questions such as "What loan type is best for me?", "How much would I qualify for?", and "What is required to get pre-qualified?"

27. Another one of Defendant's websites is www.cityfirstreversemortgage.com (referred to as the "reverse mortgage site").

28. Defendant's reverse mortgage site promotes Defendant's reverse mortgage products and provides a variety of questions and answers regarding reverse mortgages.

29. Defendant markets its mortgage and mortgage-related products, in part, through placing telemarketing phone calls.

30. Hudson and the putative class members did not provide "prior express written consent" (as that term is defined in 47 C.F.R. §64.1200(f)(9)) or any form of consent to be contacted on their phones by Defendant or anyone acting on its behalf.

### DEFENDANT'S CALLS TO PLAINTIFF

31. On August 28, 2024, Defendant placed a prerecorded voice call to

Plaintiff's cell phone and left a message on Hudson's cell phone. The prerecorded voicemail stated, " . . . calling with City First regarding your reverse mortgage. The program has undergone substantial changes this year and it looks as if you may qualify for some additional funds. Please give me a call back at 707-940-3798 and I'd be more than happy to go over these changes with you. I look forward to speaking with you soon. Thanks."

32. The phone number that appeared on Hudson's phone as being associated with the August 28, 2024 call was 657-237-7314.

33. On September 24, 2024, Defendant placed a prerecorded voice call to Plaintiff's cell phone and left a message on Hudson's cell phone. The prerecorded voicemail stated, "Hello, this is Josh with City First. I'm not sure if you are aware but the reverse mortgage has changed pretty substantially this year. I'm not sure you remember but back when you did yours it didn't really matter what your home was worth, all the math was based off a home value limit of $679,000. Nowadays we can use your home's true value and I see that you may qualify for a substantial amount of money. If you have a moment give me a call back so I can crunch the numbers and let you know what's available these days. My office line is 510-288-8471. Again, 510-288-8471. Thank you very much and enjoy the rest of your day."

34. On October 8, 2024, Defendant placed a prerecorded voice call to Plaintiff's cell phone and left a message on Hudson's cell phone. The prerecorded voicemail stated, "Hi, Eleanora. Pardon the intrusion. This is Micah Greenburg with City First. I'm not sure if you're aware but back when you did your reverse mortgage, it didn't matter what your home value was based off an appraised value cap of $679,000. Nowadays we are able to use your home's true value to qualify and I see here that there is a pretty substantial amount of money that would be available to you. It only takes me about two minutes or so to crunch the numbers and let you know what' available these days. If you could call me back, my office line is 323-879-8330. Again, 323-879-8330. Thanks so much and enjoy the rest of your day. Bye-bye."

35. While the beginning of the October 8, 2024, call identified the intended recipient as "Eleanora" and the caller as "Micah Greenburg," the unnatural cadence of the voicemail made clear that the voicemail was a prerecorded and/or an artificial voice.

36. Mr. Greenberg has a profile on Defendant's reverse mortgage website. Mr. Greenberg is identified on Defendant's website as a "Reverse Mortgage Expert" with the job title of "Business Development Manager."

37. On February 4, 2025, Defendant placed a call to Plaintiff's cell phone and left a message on Hudson's cell phone. The voicemail stated, "Hi, this is Joshua Lawson and I wanted to give you a call about your current reverse mortgage. There have been some changes in the reverse industry in the last few years and it appears that we may be able to qualify you for some additional cash. Give me a call at 510-288-8471 if you'd like to discuss. Thank you very much and have a great day."

38. Joshua Lawson has a profile on Defendant's reverse mortgage website that identified him as a "Senior Loan Officer" for Defendant. Mr. Lawson's profile also identifies his phone number as 510-288-8471 and his email address as joshua.lawson@city1st.com.

39. Hudson seeks recovery individually, and on behalf of the putative class members, for the calls placed to Hudson and the putative class members despite their phone numbers being registered on the DNC List.

## **DIRECT AND VICARIOUS LIABILITY**

40. Without the benefit of discovery, and because Defendant disclosed its identity in the calls at issue, Hudson assumes Defendant directly placed the calls at issue.

41. However, if some or all the calls were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

42. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by

> outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

43. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

44. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

45. If Defendant directly placed the calls at issue to Hudson and the putative class members, Defendant is directly liable for the placing of those calls.

46. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

47. If Defendant did not directly place the calls at issue to Hudson and the putative class members, Defendant's third-party telemarketers had actual and/or

CLASS ACTION COMPLAINT — - 7 -

apparent authority to act on behalf of Defendant.

48. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

49. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

50. Defendant acted as principals to telemarketing agent(s) who were acting on their behalf.

51. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their captive agents' TCPA violations.

52. For the count identified below, if Defendant directly placed the calls at issue to Hudson and the putative class members, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

53. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

54. Hudson seeks to represent the following classes:

**Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification to whom Defendant (or someone acting on its behalf) placed a prerecorded voice call to said person's cellular phone.

**DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) received two or more calls during a 12-month period in connection with the marketing of Defendant's products and/or services; (2) whose number was registered on the DNC List for more than 30 days at the time the calls were received; and, (3) whose phone number is registered to an individual and not a business.

55. Hudson reserves the right to add administrative subclasses or add classes, and/or to amend the definition of the proposed classes, as this lawsuit proceeds.

56. The members of the proposed classes are so numerous that joinder of all members is impracticable. Hudson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on their behalf.

57. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

58. On information and belief, Defendant has placed, and likely continues to place, prerecorded voice calls to persons without first obtaining said persons "prior express written consent." It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

59. On information and belief, Defendant has called, and likely continues to call, people whose numbers are on the DNC List. It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

60. Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed Class include, but are not limited to:

    a. Whether Defendant placed prerecorded voice calls to Hudson and the putative class members;

    b. Whether Defendant's conduct of placing prerecorded voice calls violates 47 U.S.C. § 227(b) and/or the TCPA's corresponding regulations;

    c. Whether Defendant's manner and system of obtaining consumers' "prior express written consent" was legally deficient;

    d. Whether Defendant's conduct of placing calls to placing phone numbers on the DNC List Defendant violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

e. Whether the calls were "solicitations," as defined by the TCPA;

f. Whether Defendant maintained and effectively implemented sufficient protocols to prevent the placing of calls to persons whose phone numbers are on the DNC List;

g. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

h. Whether Hudson and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

61. Hudson's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

62. Hudson and her counsel will fairly and adequately protect the interests of the members of the proposed classes. Hudson's interests do not conflict with the interests of the proposed classes she seeks to represent, and she has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

63. Hudson's counsel will vigorously litigate this case as a class action.

64. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

65. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication

resulting from supervision of the litigation by a single court.

66. Questions of law and fact, particularly (and not limited to) the propriety of placing prerecorded voice calls to Hudson and the putative class members and the propriety of placing calls to persons on the DNC List, predominate over questions affecting only individual members.

67. Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the putative class members.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.*
### (Prerecorded Voice Call Violations – Individually, and on Behalf of The Putative Class)

68. Hudson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

69. The TCPA provides, in part that: "It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

70. The FCC's regulations implementing the TCPA provide that prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

71. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using . . . an artificial or prerecorded voice. . . . and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

72. By placing prerecorded voice calls to Hudson and the putative class members without first obtaining their "prior express written consent" (or any form of

CLASS ACTION COMPLAINT - 11 -

consent), Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

73. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

74. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

75. Defendant and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Hudson and the putative class members' cell phones.

76. Hudson and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Class representative, and appointing her counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the Class for all applicable pre-

judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the Class for all costs, including the cost of class notice; and

f. Award Plaintiff and the Class members such further and other relief the Court deems just and appropriate.

## COUNT II
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)

77. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

78. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

79. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

80. By placing calls to Hudson's and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

81. In addition, the TCPA allows the Court to enjoin Defendant from placing phone calls to phone numbers that are registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

82. Defendant knew or had reason to know that Hudson's and the putative class members' phone numbers were on the DNC List, but called them anyway.

83. Defendant willfully violated the TCPA by placing calls to Hudson and the putative class members despite knowing or having reason to know they did not have consent to call them and knowing their numbers were registered on the DNC List.

84. Hudson and the putative class members are entitled to damages of $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests that the Court:

g. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Class representative, and appointing her counsel as class counsel;

h. Enter judgment in favor of Plaintiff and the Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

i. Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

j. Enter judgment in favor of Plaintiff and the Class for all applicable pre-judgment and post-judgment interest amounts;

k. Enter judgment in favor of Plaintiff and the Class for all costs, including the cost of class notice; and

l. Award Plaintiff and the Class members such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Kimberly Hudson demands a jury trial.

| | | |
|---|---|---|
| 1 | Dated: April 18, 2025 | Respectfully submitted, |
| 2 | | MILLER SHAH LLP |
| 3 | | |
| 4 | | */s/James C. Shah* |
| | | James C. Shah (SBN 260435) |
| 5 | | Email: jcshah@millershah.com |
| | | Kolin C. Tang (SBN 279834) |
| 6 | | Email: kctang@millershah.com |
| 7 | | 8730 Wilshire Blvd., Suite 400 |
| | | Los Angeles, CA 90211 |
| 8 | | Telephone: (866) 540-5505 |
| 9 | | Facsimile: (866) 300-7367 |
| 10 | | BUTSCH ROBERTS & ASSOCIATES LLC |
| 11 | | |
| 12 | | */s/Christopher E. Roberts* |
| 13 | | Christopher E. Roberts (phv forthcoming) |
| 14 | | Email: CRoberts@butschroberts.com |
| 15 | | 7777 Bonhomme Avenue, Suite 1300 |
| | | Clayton, Missouri 63105 |
| 16 | | Telephone: (314) 863-5700 |
| 17 | | *Attorneys for Plaintiff* |