**MANATT, PHELPS & PHILLIPS, LLP**
JOHN W. MCGUINNESS (Bar No. 277322)
E-mail: JMcGuinness@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

*Counsel for Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY HUDSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY FIRST MORTGAGE SERVICES, LLC,<br><br>Defendant. | NO. 2:25-cv-03454-WLH-JC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      January 30, 2026<br>Time:      1:30 p.m.<br>Judge:    Hon. Wesley L. Hsu<br>Crtrm:    9B<br>Filed:      April 18, 2025<br>FAC Filed: Oct. 17, 2025 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT**, on January 30, 2026 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Wesley L. Hsu, or another judge sitting in his stead, located in Courtroom 9B of the United States District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, 9th Floor, Los Angeles, California 90012, Defendant City First Mortgage Services, LLC ("City First") will and does hereby respectfully move to dismiss the putative First Amended Class Action Complaint (*see* Dkt. 35, "FAC") by Plaintiff Kimberly Hudson ("Plaintiff") in this matter, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

As demonstrated in the accompanying Memorandum of Points and Authorities below, the entire FAC should be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts, in accordance with federal pleading standards, supporting a plausible claim for relief under the Telephone Consumer Protection Act (*i.e.*, 47 U.S.C. § 227, *et seq.*, the "TCPA"). More specifically, the FAC is facially defective and subject to dismissal because Plaintiff fails to plead plausible facts supporting, *inter alia*: (i) a theory of TCPA liability (direct or vicarious liability), which requires a complete dismissal under the weight of applicable authority on these fronts, or (ii) essential elements of her asserted claims under Section 227(b) of the TCPA (Count I) and Section 227(c) of the TCPA (Count II). And as Plaintiff has already amended and did not cure these defects, which were carried over from her original complaint, further amendment would be futile and dismissal with prejudice is therefore appropriate.

This Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities below, all papers on file herein, all matters subject to judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to ruling hereon. This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 24 and 27, 2025. The parties were unable to reach an agreement and thus this Motion is opposed.

Dated: October 31, 2025

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: */s/ John W. McGuinness*
John W. McGuinness
2049 Century Park East
Los Angeles, California 90067
E-mail: JMcGuinness@manatt.com
Tel.: (202) 585-6540

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................... 1

RELEVANT ALLEGATIONS ..................................................................... 3

APPLICABLE LEGAL STANDARDS ......................................................... 5

ARGUMENT ............................................................................................... 6

I.    Plaintiff's FAC Fails to Plausibly Allege a Theory of TCPA Liability ........... 7

    A.    Plaintiff Fails to Plausibly Allege a Direct TCPA Liability
       Theory. ............................................................................. 8

    B.    Plaintiff Fails to Allege a Vicarious TCPA Liability Theory. ............. 15

II.   Count I of the FAC Should Also Be Dismissed Because Plaintiff Fails
    to Plead The Subject Voicemail "Messages" Were Actually
    "Prerecorded" ................................................................................... 17

III.  Count II of the FAC Should Also Be Dismissed Because Plaintiff Fails
    to Plead Facts Supporting Certain Essential Elements of a TCPA DNC
    Claim ................................................................................................. 22

IV.   The FAC Should Be Dismissed With Prejudice. ............................................ 24

CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
    2019 WL 8953349 (E.D. Va. Apr. 15, 2019)............................................8, 11, 14

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
    2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ...........................................................7

*Aikens v. Synchrony Fin.*,
    2015 WL 5818911 (E.D. Mich. July 31, 2015).................................................18

*Allison v. Wells Fargo Bank, N.A.*,
    2022 WL 10756885 (S.D. Cal. Oct. 18, 2022)..................................................17

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) ...............................................................................6

*Andersen v. Nexa Mortg., LLC*,
    2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ...........................................passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................6, 11, 12, 14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ...............................................................................................6

*Bank v. Alleviate Tax, LLC*,
    2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) ...................................................9

*Bank v. Vivint Solar, Inc.*,
    2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*,
    2019 WL 1306064 (Mar. 22, 2019) ............................................................14, 16

*Barnes v. SunPower Corp.*,
    2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ..................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................6, 12, 18

*Belleville v. Fla. Ins. Servs., Inc.*,
    2024 WL 2342337 (S.D. Fla. May 23, 2024), *report and rec. adopted in part*, 2024 WL 2794108 (May 31, 2024) ......................................................9, 11

- ii -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES
(continued)

**Page**

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ........................................................ 8

*Blair v. Assurance IQ LLC*,
2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) ............................................... 20

*Brown v. Nano Hearing Tech OPCP, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) ...................................................... 10

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ...................................................... 8

*Cal. Crane Sch., Inc. v. Google LLC*,
2025 WL 2541913 (9th Cir. Sept. 4, 2025) ........................................................ 5

*Cholakyan v. Mercedes-Benz USA, LLC*,
2012 WL 12861143 (C.D. Cal. Jan. 12, 2012) .................................................. 15

*Cunningham v. Caribbean Cruise Lines, Inc.*,
2016 WL 7494871 (S.D. Fla. Dec. 29, 2016) .................................................... 22

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023) .................................................... 9

*Cunningham v. McDonald*,
2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*,
2018 WL 6198417 (Nov. 28, 2018) .................................................................... 22

*Cunningham v. Politi*,
2019 WL 2519568 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*,
2019 WL 2524736 (June 19, 2019) .................................................................... 22

*Curry v. Synchrony Bank, N.A.*,
2015 WL 7015311 (S.D. Miss. Nov. 12, 2015) ................................................ 18

*Davis v. Rockloans Marketplace, LLC*,
2024 WL 4896587 (S.D. Cal. Nov. 26, 2024) .............................................17, 21

*Denney v. Humana Ins. Co.*,
2023 WL 8358564 (W.D. Okla. Dec. 1, 2023) ................................................. 15

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ............................................... 10

- iii -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS FAC, CASE NO. 2:25-cv-03454-WLH-JC

# TABLE OF AUTHORITIES
(continued)

**Page**

*Doyle v. GoHealth, LLC*,
  2023 WL 3984951 (D.N.J. Mar. 30, 2023) ........................................................ 14

*Fabricant v. Elavon, Inc.*,
  2020 WL 11884505 (C.D. Cal. Aug. 25, 2020) ................................................. 16

*Forney v. Hair Club for Men Ltd., Inc.*,
  2017 WL 4685549 (C.D. Cal. June 26, 2017) ................................................... 17

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .................................................... 9

*Gillam v. Reliance First Capital, LLC*,
  2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................................... 2, 22, 24

*Hale v. Teledoc Health, Inc.*,
  2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) .................................................... 16

*Hamilton v. El-Moussa*,
  2020 WL 8993127 (C.D. Cal. Apr. 30, 2020) ..................................................... 8

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015) ................................................... 12

*Hicks v. Alarm.com Inc.*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020) .................................. 19, 20, 22, 23

*Hodge v. Travel + Leisure Co.*,
  2025 WL 327741 (N.D. Cal. Jan. 29, 2025) ...................................................... 18

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
  2015 WL 13648356 (W.D. Ark. June 16, 2015) ................................................ 14

*In re Dish Network, LLC*,
  28 FCC Rcd. 6574 (2013) .................................................................................... 8

*In re Monitronics Int'l, Inc., TCPA Litig.*,
  223 F.Supp.3d 514 (N.D.W.Va. 2016), *aff'd sub nom.*, 885 F.3d 243 (4th
  Cir. 2018) ........................................................................................................... 16

*In re Rules & Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (2015) ............................................................................... 1, 9

*Jones v. Royal Admin. Servs., Inc.*,
  887 F.3d 443 (9th Cir. 2018) ...................................................................... 15, 16

- iv -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS FAC, CASE NO. 2:25-cv-03454-WLH-JC

# TABLE OF AUTHORITIES
(continued)

**Page**

*Jovanovic v. SRP Invs. LLC*,
2021 WL 4198163 (D. Ariz. Sept. 15, 2021)....................................................24

*Katz v. Caliber Home Loans, Inc.*,
2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ................................................11

*Kemen v. Cincinnati Bell Tel. Co., Inc.*,
2023 WL 361136 (S.D. Ohio Jan. 23, 2023)....................................................22

*Kristensen v. Credit Payment Servs.*,
12 F.Supp.3d 1292 (D. Nev. 2014) ..................................................................15

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)..........................................................................24

*Lovelady v. United States Customs & Border Prot.*,
2025 WL 523901 (N.D. Cal. Feb. 18, 2025).......................................................6

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013)....................................................12

*Manopla v. Sansone Jr's 66 Automall*,
2020 WL 1975834 (D.N.J. Jan. 10, 2020) .......................................................18

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022).................................................23, 24

*Matthews v. Senior Life Ins. Co.*,
2025 WL 1181789 (E.D. Va. Apr. 22, 2025).............................................10, 14

*Mattson v. Quicken Loans Inc.*,
2019 WL 7630856 (D. Or. Nov. 7, 2019) ........................................................23

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)..................................8, 10, 15, 16

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .................................................16

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ......................................8, 18, 19, 20

*Moffet v. Everglades Coll., Inc.*,
2024 WL 1657195 (M.D. Fla. Mar. 4, 2024), *report and rec. adopted in part*, 2024 WL 3342265 (June 5, 2024) ......................................................19, 20

- v -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS FAC, CASE NO. 2:25-cv-03454-WLH-JC

# TABLE OF AUTHORITIES
(continued)

**Page**

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ................................................. 22, 23

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015) ................................................ 11

*Naiman v. TranzVia LLC*,
2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ................................................. 16

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ................................................... 7

*Pareto v. FDIC*,
139 F.3d 696 (9th Cir. 1998) ......................................................................... 6

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ............................................... 7

*Peterson v. City of Hamilton*,
2006 WL 2850582 (D. Mont. Sept. 29, 2006) ............................................. 6, 16

*Rahimian v. Adriano*,
2022 WL 798371 (D. Nev. Mar. 16, 2022) ................................................. 17, 22

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ..................................... passim

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020) ................................................. 7, 24

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ......................................................................... 22

*Saunders v. NCO Fin. Sys., Inc.*,
910 F.Supp.2d 464, 465 (E.D.N.Y. 2012) ..................................................... 2

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ........................................ 10, 13, 15

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ............................................... 8

*Smith v. Direct Bldg. Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ................................................... 14

- vi -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS FAC, CASE NO. 2:25-cv-03454-WLH-JC

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Smith v. Pro Custom Solar LLC,*
 2021 WL 141336 (D.N.J. Jan. 15, 2021) ........................................... 17

*Smith v. Vision Solar LLC,*
 2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) .................................... 22

*Somers v. Apple, Inc.,*
 729 F.3d 953 (9th Cir. 2013) ............................................................. 5

*Soundboard Ass'n v. FTC,*
 888 F.3d 1261 (D.C. Cir. 2018) ....................................................... 19

*Sprewell v. Golden State Warriors,*
 266 F.3d 979 (9th Cir. 2001) ............................................................. 6

*Thomas v. Taco Bell Corp.,*
 582 F.App'x 678 (9th Cir. 2014) .................................................... 7, 8

*Wick v. Twilio Inc.,*
 2017 WL 2964855 (W.D. Wash. July 12, 2017) ......................... 13, 14

*Wilson v. Hewlett-Packard Co.,*
 668 F.3d 1136 (9th Cir. 2012) ........................................................... 6

*Wilson v. MEDVIDI Inc.,*
 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ........................ 10, 12, 14

*Woodard v. Health Ins. All.,*
 2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ......................................... 9

**STATUTES**

47 U.S.C. § 227(b) .....................................................................passim

47 U.S.C. § 227(b)(1)(A)(iii) ..................................................... 6, 19

47 U.S.C. § 227(b)(3) ........................................................................ 2

47 U.S.C. § 227(c) ........................................................... 1, 3, 22, 23

47 U.S.C. § 227(c)(5) ..................................................................... 2, 7

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(a)(1) ................................................................. 6

47 C.F.R. § 64.1200(a)(2) ................................................................. 6

- vii -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS FAC, CASE NO. 2:25-cv-03454-WLH-JC

## TABLE OF AUTHORITIES
(continued)

**Page**

47 C.F.R. § 64.1200(c)(2)..................................................................... 7, 22

https://www.merriam-webster.com/dictionary/voicemail ....................................... 18

S. Rep. No. 102-178 (1991)..................................................................... 22

## RULES

Fed. R. Civ. P. 8................................................................................ 12

Fed. R. Civ. P. 12(b)(6) ...................................................................... passim

- viii -

## MEMORANDUM OF POINTS AND AUTHORITIES

### <u>INTRODUCTION</u>

Like its faulty predecessor, Plaintiff's FAC alleges, in the same conclusory fashion and without adequate requisite factual support, that City First violated the TCPA's "prerecorded" call provision (*i.e.*, 47 U.S.C. § 227(b)) and National "Do Not Call" ("DNC") Registry provision (*i.e.*, 47 U.S.C. § 227(c)). Plaintiff's claims still rest squarely on "voicemail" messages—each different in content, left by different people, seemingly originating from different numbers, and stemming from calls she apparently did not answer—that she concludes were "placed" to her cell number <u>either</u> by City First <u>and/or</u> by countless unidentified third party "agents" without her consent.

Though City First's previous motion to dismiss (*see* Dkt. 21) her original complaint (*see* Dkt. 1) outlined how these allegations were defective and ripe for dismissal for all the same reasons below, Plaintiff did not cure any of those defects when amending. As such, the FAC is fatally flawed and cannot survive dismissal under Rule 12(b)(6). That is because it too lacks sufficient plausible facts, pled in accordance with federal pleading standards, supporting essential elements of the asserted claims. Moreover, as the FAC represents Plaintiff's second bite at the proverbial apple here and she still has not alleged a viable TCPA claim, a third chance to amend is unwarranted and would be futile. Therefore, dismissal with prejudice is appropriate.

While Plaintiff may point out in response to this Motion that the TCPA is an important remedial statute designed to protect consumers from harassing telemarketers, federal courts do not hold TCPA plaintiffs to lower pleading standards than other federal plaintiffs or give those armed with nothing but conclusions and speculation a free pass to discovery because of this, either. This is for good reason. As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original [intended] purpose," and has "become the poster child for lawsuit abuse" in this country since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Indeed, as this Court knows,

the TCPA is one of the most heavily-litigated federal statutes in the U.S. today, with dozens of new class actions filed in federal courts across the country weekly, sometimes daily. But many of these are not filed by consumers using the statute for its intended purpose, but rather by entrepreneurial serial plaintiffs and their counsel.[1]

It is against this backdrop that federal judges have widely recognized that, in putative TCPA class actions like this one, they must dutifully exercise their role as a gatekeeper under the Federal Rules to ensure claims meet the plausibility threshold and are worthy of class treatment before defendants are subjected to the rigors and high costs of discovery and exposed to potentially bankrupting damages, while also respecting the TCPA's intended remedial purpose. As such, TCPA complaints like the one at bar, built on a weak foundation of barren conclusions lacking in requisite factual support, are routinely dismissed by federal district courts in and beyond the Ninth Circuit. Here, Plaintiff's FAC should suffer the same fate for several reasons:

**First**, Plaintiff's <u>entire</u> FAC is subject to dismissal under Rule 12(b)(6) because Plaintiff fails adequately allege a plausible theory of liability under the TCPA—*i.e.*, that City First: (i) itself, not a third party, literally took the steps necessary to "physically" place each phone call at issue directly to her, as required to plead direct TCPA liability; or (ii) was in a common law agency relationship with a third party who did directly call her, as required to plead vicarious TCPA liability. This defect <u>alone</u> is fatal to all of Plaintiff's TCPA claims under the weight of applicable federal authority on these points discussed below. And it is well accepted that relying on the pled content

---

[1] All this is unsurprising, given the broad financial relief the TCPA affords and the ease with which such claims can be brought as a class action and quickly settled for far beyond their value. Depending on the claim, a plaintiff can recover up to $500 in statutory damages per call, trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(b)(3) & (c)(5). These numbers may seem small individually, but can be huge in a class action, hence why most TCPA cases are styled as class actions and settled for much more than what the named plaintiff would ever receive at trial. And while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from innocent defendants through the threat of expensive class action litigation. *Saunders v. NCO Fin. Sys., Inc.*, 910 F.Supp.2d 464, 465 (E.D.N.Y. 2012).

of an allegedly violative call (which is all Plaintiff did), even if a defendant's name or products are mentioned, cannot avoid a dismissal on these grounds standing alone.

**Second**, Count I also should be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts, beyond her naked conclusions which are not entitled to a presumption of truth, supporting an inference that the voicemails that she allegedly received involved an "artificial or prerecorded voice" (as opposed to being left by a live person), which is a critical element of any Section 227(b) claim. While courts do not expect a plaintiff to know the exact technical specifications at this stage, they have consistently held that plaintiffs must plead plausible facts supporting an inference that such technology was actually used, or face dismissal. Plaintiff pled none here.

**Third**, Count II should also be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts supporting certain elements of a Section 227(c) claim, including in particular that she qualifies as a "residential telephone subscriber" within the meaning of the TCPA, as required. Consistent with federal pleadings standards, Plaintiff's wholly conclusory allegations on these points do not pass muster, either.

## RELEVANT ALLEGATIONS

In pertinent part, Plaintiff alleges she received five calls on January 10, 2024, August 28, 2024, September 24, 2024, October 8, 2024, and February 4, 2025 respectively, each made to her cell phone number, which was purportedly "registered on the DNC List on September 1, 2003" (by whom is not stated) and is used "primarily" (but apparently not exclusively) "for personal and residential purposes." Dkt. 35, ¶¶ 17, 18, 20, 31, 34, 37, 39, 43. But Plaintiff seemingly did not answer any of these calls or interact with the callers, or at least she does not plead any facts indicating that she did. Rather, Plaintiff alleges that each call resulted in her receiving a "voicemail message"—with each being left by a different person, originating from a different phone number, and having different content. *Id*., ¶¶ 31–45.

Though she associates each message received with a different person (*see id*.), Plaintiff now concludes the first message was a "live call" and that the others were

"prerecorded and/or an artificial voice" messages for various reasons, largely because (i) the content was supposedly "generic" and "not personalized"; (ii) there was a lack of "background noise" on the call, and/or (iii) there was a short "pause." *Id.*, ¶¶ 35, 38, 40, 44. Beyond vaguely averring one speaker (for the October 8 message) used a "distinctly different" "tone" when saying "Hi, Eleanora" (*id.* ¶ 40), Plaintiff does not describe how these messages sounded (*e.g.*, robotic), or plead other contextual details.

As to whom Plaintiff now contends actually physically placed these calls (*i.e.*, City First itself or a third party), her FAC is even less clear than her original complaint. For example, Plaintiff now vaguely alleges that: (i) the first caller on January 10, 2024 identified herself as "Stephanie" (the full name is not given) and that someone named "Stephanie Trudeau" also has a "profile" page on what Plaintiff calls "Defendant's reverse mortgage website" (www.cityfirstreversemortgage.com); (ii) the number used to place the second alleged call on August 28, 2024 (657-237-7314) "appeared on [her] phone" somehow (presumably her Caller ID); (iii) the callers in four of the messages stated they were "calling from" or were "with" City First (not the last caller); (iv) all the callers left call back numbers in their messages (323-853-7913, 707-940-3798, 510-288-8471, 323-879-8330, and 510-288-8471, respectively); (v) one of the call back numbers given in two messages (510-288-8471) and the person identified in each ("Joshua Larson") appear on a "profile" page on "Defendant's reverse mortgage website"; and (vi) just the name provided in the October 8 message ("Micah Greenburg") also appears on that website. *Id.*, ¶¶ 27, 31, 32, 34, 36, 37, 39–41, 43, 45.

However, what is problematic here is not what little detail Plaintiff alleges about these calls, but rather the many details about them she continues to <u>omit</u> from her FAC. For example, Plaintiff does <u>not</u> allege, *inter alia*, that: (i) any other numbers "appeared" on her Caller ID, beyond the one alleged on August 28; (ii) that caller's number (657-237-7314) also appears on the aforementioned "reverse mortgage" website or is owned or used by City First; (iii) any of the calls originated from the same phone number as that caller or any other caller (in fact, she does not give the number

used to call her for any other calls); (iv) she tried calling any number used to call her and reached City First directly; (v) she tried calling any of the call back numbers provided in the voicemails and reached City First directly; (vi) City First's **name** "appeared" on her Caller ID for any calls; (vii) that the number associated with "Joshua Larson" in the message or on his "profile" page was used to place a call; (viii) any of the other call back numbers given in the messages (323-853-7913, 707-940-3798, and 323-879-8330) appeared on the aforementioned website or are owned or used by City First; or (ix) any of the call back numbers given in the voicemail messages were used to place any of the calls. In short, Plaintiff admits, as she must, that based **solely on the content** of the voicemail messages—or, as she puts it, "because Defendant disclosed its identity in the calls at issue"—and with no other factual support that Plaintiff just "**assumes** Defendant directly placed the calls at issue." *Id*. ¶ 47 (emphasis added).

Perhaps worse, Plaintiff includes a variety of purely speculative and equivocating allegations appearing throughout her FAC, all suggesting the possible involvement of third parties in the calls and that she needs "discovery" to properly identify the actual callers, which simply confirms she does not actually know who physically placed each (or any) of the alleged phone calls in this case. *See, e.g.*, Dkt. 35, ¶¶ 30, 47, 48, 51, 53–59, 61, 82, 83 (reflecting allegations about unidentified third parties making calls "on behalf" of City First).

As discussed below, these allegations are deeply flawed in a number of key respects, do not comply with federal pleading standards, and cannot survive dismissal under the weight of applicable authority on the standards for pleading TCPA claims.

## **APPLICABLE LEGAL STANDARDS**

"'Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.'" *Cal. Crane Sch., Inc. v. Google LLC*, 2025 WL 2541913, at *1 (9th Cir. Sept. 4, 2025) (quoting *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)). A "bare assertion" and "conclusory allegation[s]" will not suffice to avoid dismissal

under this Rule. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id.* (pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In short, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not pass muster. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 930 (9th Cir. 2011). Moreover, while the Court must generally accept well-pled facts as true under this Rule, it need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). *See also Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient" to avoid dismissal under federal pleading standards); *Lovelady v. United States Customs & Border Prot.*, 2025 WL 523901, at *1 (N.D. Cal. Feb. 18, 2025) (courts need not credit as true "speculation … dressed up as fact"); *Peterson v. City of Hamilton*, 2006 WL 2850582, at *1 (D. Mont. Sept. 29, 2006) ("A plaintiff … must plead [facts supporting] the essential elements of a claim to survive dismissal under Rule 12(b)(6)."). Finally, the U.S. Supreme Court has said that it is inappropriate to assume a plaintiff "can prove facts that [she] has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## **ARGUMENT**

In Count I of the FAC (*see* Dkt. 35, ¶¶ 76–83), Plaintiff seeks relief under Section 227(b) of the TCPA which provides that no person shall "make any call (other than a call … made with the prior express consent of the called party) using … an artificial or prerecorded voice" to a cellular number. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) & (2). In Count II (*see* Dkt. 35, ¶¶ 85–91), Plaintiff

seeks relief under the TCPA's National DNC Registry provision which, along with its related implementing regulations, prohibits *inter alia* the "initiat[ion]" of more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As discussed below, however, Plaintiff's FAC critically omits plausible facts supporting such claims.

## I.    <u>Plaintiff's FAC Fails to Plausibly Allege a Theory of TCPA Liability.</u>

As a threshold fatal defect, Plaintiff's FAC should be dismissed because it does not adequately allege a theory of TCPA liability. It is well-accepted that there are two potential theories of liability under the TCPA that must be adequately pled in <u>all</u> cases—direct liability or vicarious liability. *See Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). This rule means that the defendant "must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call"—and of course, that the plaintiff must pled adequate facts, not naked conclusions, supporting all of this. *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Failure to adequately plead these theories warrants dismissal of any TCPA claim brought under any provision at the pleadings stage under Rule 12(b)(6). *See, e.g.*, *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims."). Here, Plaintiff failed to adequately plead either theory of liability against City First, mandating a complete dismissal of her FAC.

### A. Plaintiff Fails to Plausibly Allege a Direct TCPA Liability Theory.

As to the former theory, federal courts across the country have uniformly recognized that direct liability under the TCPA applies only to persons or entities that "make" or "initiate" telemarketing calls, which means to "physically place" each phone call at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)).[2] *See also Hamilton v. El-Moussa*, 2020 WL 8993127, at \*2 (C.D. Cal. Apr. 30, 2020) (dismissing on this basis, citing *Thomas*); *Brownlee v. Allstate Ins. Co.*, 2021 WL 4306160, at \*1 (N.D. Ill. Sept. 22, 2021) (dismissing on this basis and holding TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at \*6 (S.D.N.Y. Feb. 6, 2023) (dismissing and holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal); *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue.").

Conversely, direct TCPA liability "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at \*3 (N.D. Ill. Mar. 23,

---

[2] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and dismissing conclusory direct TCPA liability claims like Plaintiffs' (including those above and others) have uniformly held that "make" or "initiate" in this context means to "physically" place a call. *See Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at \*3–5 (N.D. Cal. Mar. 28, 2018).

2022) (dismissing on this basis, holding that "a [TCPA] defendant 'generally does not [physically] "initiate" calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). In other words, alleged **indirect** connections to a phone call, such as a third party placing a call on behalf of the defendant, will not do. *See also* 30 FCC Rcd. at 7980 (ruling that there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability to attach).

In line with bedrock federal pleading requirements, however, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call" without further factual enhancement "is **not** sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal on this basis under Rule 12(b)(6), either. *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (emphasis added). *See also Belleville v. Fla. Ins. Servs., Inc*., 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report & rec. adopted in part & rejected in part*, 2024 WL 2794108 (May 31, 2024) (recommending dismissal where the plaintiff merely alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) ("At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls."); *Woodard v. Health Ins. All.*, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (holding all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing on this basis where "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls" (emphasis original)). Indeed, "simply asserting a purported fact," like Plaintiff repeatedly did here, "does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing on this basis). Rather, "[a]s a party to the[] calls, Plaintiff 'should be able,'" and indeed is required, "'to provide greater

detail'" to sufficiently plead direct TCPA liability. *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)) (dismissing on this basis).

Taking an "either/or" approach and baldly concluding that the "defendant and/or its agents called me" (like Plaintiff also did here) likewise does not suffice to plausibly allege direct TCPA liability at the pleadings stage, as numerous federal courts in and beyond this Circuit have found. *See, e.g.*, *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant itself physically placed each at-issue call directly to plaintiff); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing on this basis, holding a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing TCPA case on these grounds were the plaintiff alleged that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA" without further factual enhancement).

Myriad courts have also correctly recognized that even a call allegedly offering the defendant's products, identifying the defendant by name, providing the defendant's contact information, and/or originating "from" someone associated "with" the defendant in some way—which Plaintiff admits is all she is relying on—does not allow for a plausible inference that the defendant <u>itself</u>, and not a third party, physically placed any call for direct TCPA liability purposes, without more. *See, e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (dismissing and finding no direct liability in TCPA case, even though at-issue text allegedly identified defendant by name and contained a link to its website); *Scruggs*, 2020 WL 9348208, at *10 ("The sole factual allegation linking [the defendant] to the calls is that the caller identified himself as 'associated with [the defendant]'" which is "insufficient under the *Iqbal* pleading standards" to plausibly

allege a direct TCPA liability theory) (citing *Aaronson,* 2019 WL 8953349, at *2); *Belleville*, 2024 WL 2342337, at *1–4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided its website, where plaintiff merely alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Katz v. Caliber Home Loans, Inc*., 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"). In sum, the foregoing well-reasoned authorities (among many others) show the alleged content of the subject communications is not dispositive of this issue, and therefore is insufficient to plead direct TCPA liability, standing alone.

Applying the foregoing firmly-rooted legal principles here, it is readily apparent Plaintiff's FAC fails to sufficiently allege a direct TCPA liability theory against City First, warranting its complete dismissal. Indeed, taking Plaintiff's allegations as a whole, it is readily apparent that Plaintiff has simply adopted a classically flawed "either/or" pleading approach that countless courts have rejected as being insufficient to state a TCPA liability theory under Rule 12(b)(6). *See, e.g*., Dkt. 35, ¶ 47 ("Without the ***benefit of discovery,*** and because Defendant disclosed its identity in the calls at issue, Hudson ***assumes*** Defendant directly placed the calls at issue."); ¶ 48 ("***However, if some or all the calls were placed by third-party/parties on behalf*** of Defendant, in the alternative, Defendant is vicariously liable for those calls."); ¶ 53 ("***However, Defendant may have*** hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by ***third-party telemarketers***."); ¶ 54 ("***If Defendant did not directly place*** the calls at issue to Hudson and the putative class members, ***Defendant's third-party telemarketers*** had actual and/or apparent authority to act on behalf of

Defendant."); ¶ 58 (suggesting that City First "outsourced" the placement of the calls to "agents"); ¶ 59 ("For the count [*sic*] identified below, *if* Defendant directly placed the calls at issue to Hudson and the putative class members, it is directly liable. Alternatively, ***to the extent any calls were placed by a third-party agent(s)*** acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications."); ¶ 82 ("***Defendant and/or those acting on their behalf*** willfully violated the TCPA….") (all emphases added). *See also id.* ¶¶ 30, 51, 55–57, 61, 83.

In other words, what Plaintiff is really alleging, at bottom, is that either City First <u>and/or</u> countless unidentified third parties called her. However, federal courts have found that such equivocating allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). Such is particularly true when it comes to pleading plausible direct TCPA liability claims, as the myriad on-point authorities cited above dismissing similarly-defective TCPA complaints on this basis show. Nevertheless, in the end, such directly "[c]ontradictory allegations" like these "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot survive dismissal under Rule 12(b)(6). *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) (citations omitted).

Beyond this, Plaintiff expressly avers that she merely "assumes" "Defendant directly placed the calls at issue" because "Defendant disclosed its identity" during the calls (*i.e.*, that the callers said they were "with" City First). Dkt. 35, ¶ 47. In other words, she makes plain she is relying <u>solely</u> on the content of the alleged messages, which again is simply not dispositive of a defendant's direct TCPA liability at the pleadings stage standing alone, as many courts have found. *See, e.g.*, *Wilson*, 2025 WL 2856295, at *4 (dismissing on this basis, even though the text messages at issue identified the defendant by name, holding "[d]espite [p]laintiff's conclusory allegation that the text messages were sent by [d]efendant, the complaint provides no factual details plausibly suggesting that [d]efendant actually [physically] sent them").

Why courts have widely adopted this sound analytical approach and do not rely solely on the content of an alleged communication to determine TCPA liability at the pleadings stage is in recognition that companies often hire third parties to handle their outbound calls. Indeed, a call originating from third party vendor (especially if it is "prerecorded" as alleged here) would naturally identify the defendant by name and sell its products, or provide a call back number for the defendant. That is the whole point of hiring a call vendor. Such calls may originate "from" the defendant or someone associated "with" the defendant (as Plaintiff claims here) in a technical sense. But such calls are not "physically placed" by the defendant to the plaintiff directly and thus cannot support a direct TCPA liability theory; as such, more facts are needed before such liability can attach. *See, e.g.*, *Scruggs*, 2020 WL 9348208, at *10 (similar allegations that the calls were from someone identifying themselves as "associated with" defendant were insufficient for direct liability alone); *Barnes v. SunPower Corp.*, 2023 WL 2592371, at *1–3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller). In short, "[m]erely offering a good or service for sale does not mean that a retailer [itself physically] initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017).

Here, this Court cannot base a reasonable inference that City First itself physically placed each of the subject calls directly to her cell phone number, thus is directly liable under the TCPA for them, based solely on their alleged content. For example, as discussed above, Plaintiff's FAC does <u>not</u> allege or even state in a conclusory fashion, *inter alia*, that (i) any of call back numbers given in the purported messages were used to place any of the subject calls or appeared on her Caller ID; (ii) the one caller's number that she identifies in her FAC (657-237-7314) appears on the supposed "reverse mortgage website"; (iii) City First owns that number or any other number used to place the subject calls; (iv) she called that number, any number used

to call her, or any of the call back numbers given in the messages and reached City First; or (v) City First's name appeared on her Caller ID for any call. *See* discussion at pp. 3–5, *supra*. Such facts **might** have supported a plausible direct TCPA liability theory here. *See, e.g.*, *Wilson*, 2025 WL 2856295, at *4 (dismissing where there was "no discussion … of any investigation [p]laintiff conducted to form the understanding that [d]efendant operated the separate phone numbers from which [the subject text] messages were sent"); *Matthews*, 2025 WL 1181789, at *3 (allegations the plaintiff received calls "from defendant" deemed insufficient for direct TCPA liability where, as here, the plaintiff did not "link" the identified phone number for the caller to the defendant).[3] That Plaintiff's FAC omits such facts in this case, even after amendment, is telling and fatal to all of her TCPA claims under Rule 12(b)(6).

Perhaps the "death knell" to Plaintiff's efforts to state a plausible direct TCPA liability claim is that she still suggests in her pleading that she needs "discovery" to do so. *See* Dkt. 35, ¶ 47. It is axiomatic that the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Rather, as one court dismissing a TCPA claim on this basis aptly held:

> As master[s] of [their] Complaint, it is [a plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc*., 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015). Put differently, all federal plaintiffs "must have a basis in fact and law for filing a lawsuit; [they] cannot file and then conduct discovery to see if there are facts that support [their] claim[s]." *Cholakyan v. Mercedes-Benz USA, LLC*, 2012 WL

---

[3] *See also Rogers v. Assurance IQ*, 2023 WL 2646468, at *5; *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *1, 4–6 (D.N.J. Mar. 30, 2023); *Aaronson*, 2019 WL 8953349, at *2; *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (all dismissing TCPA complaints on this basis where complaint lacked such critical details).

12861143, at *24, n.151 (C.D. Cal. Jan. 12, 2012). Put in context of this case, Plaintiff's pled suggestion that she "needs discovery to confirm who called [her] and how that person is related to" City First shows that she is "on an impermissible fishing expedition" and is not pleading actual facts; and it further confirms that she actually does "not know who called" her, and thus that she has not adequately pled a direct TCPA liability theory in this case. *Scruggs*, 2020 WL 9348208, at *6–7, 10.

## B. Plaintiff Fails to Allege a Vicarious TCPA Liability Theory.

Plaintiff's attempt to state an "alternative" vicarious TCPA liability theory (*see* Dkt. 35, ¶¶ 48–59) fares no better. For one thing, "pleading in the alternative" requires pleading ***facts***, not bald conclusions, supporting an alternative legal theory. *See, e.g.*, *Denney v. Humana Ins. Co.*, 2023 WL 8358564, at *3 (W.D. Okla. Dec. 1, 2023) ("[A]lternative pleading does not absolve a plaintiff of the duty to present facts that would state a claim on all theories.") (internal quotation marks omitted). By suggesting she needs "discovery," Plaintiff admits she has <u>no</u> facts supporting vicarious liability.

For another, in this or any context, vicarious liability cannot be casually pled, and federal courts uniformly require more factual enhancement before hauling a defendant into court based on the alleged acts of an absent third party. In this regard, federal courts apply common law agency principles to determine vicarious TCPA liability. *See, e.g.*, *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (citing, *inter alia*, Restatement (3d) of ("Restatement") Agency § 1.01). However, "[t]hough 'the precise details of the agency relationship need not be pleaded to survive [dismissal], sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks*, 2018 WL 1524067, at *5 (quoting *Kristensen v. Credit Payment Servs.*, 12 F.Supp.3d 1292, 1301 (D. Nev. 2014)). The mere alleged "existence of ***some*** connections between the defendant and the maker of the call will not suffice" to plausibly allege vicarious TCPA liability and avoid dismissal, either. *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *3 (emphasis in original).

Further, the Ninth Circuit and other courts have widely recognized that vicarious TCPA liability cannot attach without the "essential ingredient" of control. *Jones*, 887 F.3d at 450. Consistent with federal pleading standards, however, one "cannot simply allege general control in a vacuum" and state a viable vicarious TCPA liability theory. *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015). Moreover, in the TCPA context, it is well-accepted that plaintiffs must plead non-conclusory facts suggesting that the defendant had "control" over "the manner and means" of the call campaign conducted by the third party caller specifically, and not just "control" over an "agent" generally. *In re Monitronics Int'l, Inc., TCPA Litig.*, 223 F.Supp.3d 514, 520 (N.D.W.Va. 2016), *aff'd sub nom.*, 885 F.3d 243 (4th Cir. 2018) (emphasis added). *Accord Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *6 (citing *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020)) (dismissing). *See also Meeks*, 2018 WL 1524067, at *6 (dismissing where complaint lacked specific facts suggesting defendant controlled "whether, when, and to whom to send the text messages, along with their content").[4] Plaintiff did not plead such facts.

Rather, Plaintiff only employs the legal buzzwords like "agent(s)" and "control" (among others) with no supporting facts. *See* Dkt. 35, ¶¶ 48–59. These bald allegations do not meet federal pleading standards, much less state a vicarious TCPA liability claim. *See, e.g.*, *Fabricant*, 2020 WL 11884505, at *4 (dismissing where agency "allegations [we]re not supported by facts that show[ed] 'how [the defendant] did those things or how it knew those things'") (quoting *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017)); *Hamilton*, 2020 WL 2614625, at *2–3 (dismissing in part on this basis where agency allegations were merely conclusory). Thus, the FAC should also be dismissed on vicarious TCPA liability grounds.

---

[4] That the defendant's name or its products were allegedly mentioned by the caller(s) does not support an inference of such control, either. *See, e.g.*, *Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (dismissing on this basis, holding: "[T]he inclusion of [defendant's] services in [the telemarketer's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the telemarketer] called plaintiffs at [the defendant's direction or subject to [its] control").

\* \* \*

All told, Plaintiff's equivocating "either/or" approach to pleading TCPA liability has been rejected by countless federal courts across the country. This Court should join them and dismiss the entire FAC on direct and vicarious liability grounds.

## II.    Count I of the FAC Should Also Be Dismissed Because Plaintiff Fails to Plead The Subject Voicemail "Messages" Were Actually "Prerecorded".

Count I further fails because Plaintiff critically omits sufficient non-conclusory facts from her FAC supporting a core element of any claim under Section 227(b) of the TCPA—*i.e.*, that the subject "messages" were truly "prerecorded" and not a live person speaking. *See, e.g.*, *Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098, at \*4 (C.D. Cal. Aug. 12, 2024) ("To survive a motion to dismiss [for a Section 227(b) claim], a plaintiff must include factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used.") (citing *Forney v. Hair Club for Men Ltd., Inc.*, 2017 WL 4685549, at \*2 (C.D. Cal. June 26, 2017)). Under the *Iqbal/Twombly* pleading standard, plaintiffs cannot simply refer to a call or "voice" as being "prerecorded" or "artificial" to state such a claim. *See Allison v. Wells Fargo Bank, N.A.*, 2022 WL 10756885, at \*3 (S.D. Cal. Oct. 18, 2022) (dismissing and rejecting argument "the use of a 'prerecorded voice' is [a] self-defining" term).

Instead, to survive dismissal on this front, their "complaint must include some factual allegations beyond 'the call had a prerecorded voice.'" *Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at \*3 (D.N.J. Jan. 15, 2021). Accordingly, myriad district courts in the Ninth Circuit and across the country have consistently dismissed such claims under Rule 12(b)(6) where (as here) plaintiffs do little more than parrot the statutory text or case law, rather than plead actual facts supporting an inference that a call they received was actually "prerecorded." *See, e.g.*, *Andersen*, 2024 WL 3762098, at \*4 (dismissing where plaintiff omitted such requisite factual allegations); *Davis v. Rockloans Marketplace, LLC*, 2024 WL 4896587, at \*2 (S.D. Cal. Nov. 26, 2024) (same); *Rahimian v. Adriano*, 2022 WL 798371, at \*2 (D. Nev. Mar. 16, 2022)

(dismissing, and noting most federal courts in California have required specific facts to support the conclusion that defendants used a prerecorded voice at the pleadings stage); *Manopla v. Sansone Jr's 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) (dismissing where plaintiff failed to allege facts about "the tenor, nature, or circumstances" of the calls).

These courts, among many others, have correctly recognized that, to comply with federal pleading standards, a TCPA complaint cannot rest on naked conclusions to plausibly allege a Section 227(b) claim and, instead, must contain some actual facts and provide sufficient contextual details from which it can be reasonably inferred that such a "voice" was actually used. *See, e.g.*, *Curry v. Synchrony Bank, N.A.*, 2015 WL 7015311, at *2–3 (S.D. Miss. Nov. 12, 2015) (dismissing Section 227(b) claim where plaintiff had "'not provided sufficient contextual details to determine whether she spoke to a human or merely heard a recording upon picking up the phone'") (quoting *Aikens v. Synchrony Fin.*, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)).[5]

Such details are of critical import in TCPA cases like this one, where the plaintiff allegedly received a voicemail and did not answer the call or interact with the caller. Indeed, by definition, a voicemail "is an electronic communication system in which ***spoken messages are recorded or digitized and stored for later playback*** by the intended recipient." *See* https://www.merriam-webster.com/dictionary/voicemail (last visited October 29, 2025) (emphasis added). Yet, a voicemail left by a live person in real time does not violate Section 227(b) of the TCPA. *See Andersen*, *supra*.

*Metzler v. Pure Energy USA LLC* is instructive on this point. There, the court dismissed a similar TCPA complaint based on purported "prerecorded" voicemails,

---

[5] Nor are plaintiffs entitled to discovery to plead such facts. *See, e.g.*, *Rogers v. Assurance*, 2023 WL 2646468, at *5 (dismissing, holding: "[e]ven at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that the calls were in-fact pre-recorded" and such "information is known to Plaintiffs without any discovery"); *Hodge v. Travel + Leisure Co.*, 2025 WL 327741, at *2 (N.D. Cal. Jan. 29, 2025) (dismissing such a claim, ruling similarly, holding "[i]t would be inconsistent with *Twombly* to allow such conclusory allegations to satisfy a plaintiff's pleading burden" and that this "does not create an impossible burden" on plaintiffs prior to discovery, and noting that "district courts within this Circuit largely agree").

where the plaintiff did not interact with the caller or adequately describe how the voice sounded, and the content of "[t]he voicemail itself [as alleged] provide[d] no indication that it was prerecorded as opposed to having been left by a caller reading from a script." 2023 WL 1779631 at *1, 6. Other courts have ruled similarly in voicemail cases, even where there were more contextual details pled than here. *See, e.g.*, *Andersen*, 2024 WL 3762098, at *4 (allegations about "pauses" insufficient to show voicemail was prerecorded); *Moffet v. Everglades Coll., Inc.*, 2024 WL 1657195, at *3 (M.D. Fla. Mar. 4, 2024), *report & rec. adopted in part by* 2024 WL 3342265 (June 5, 2024) (ruling similarly about pauses); *Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (similar allegations about a "generic" voicemail insufficient).

Applying the foregoing well-reasoned authorities in this case further dooms Count I to dismissal for multiple reasons. For one, the FAC omits any plausible facts suggesting that any "voice" heard on the subject voicemail messages was "a prerecorded and/or an artificial voice" as Plaintiff baldly concludes (*see* Dkt. 35, ¶ 40), as opposed to just live persons who left her routine voicemails. Indeed, Plaintiff does not specify which type of "voice" technology that she contends was actually used here, even though the terms "artificial" and "prerecorded" are not synonymous under the TCPA and they involve vastly different forms of technology. *See* 47 U.S.C. §227(b)(1)(A)(iii) (restricting calls made using an "artificial or prerecorded voice").[6] That Plaintiff's FAC does not properly differentiate between these two distinct technologies even after City First pointed this issue out in its previous motion to dismiss (*see* Dkt. 21 at 11–12)—which should be easy to do given that such facts should be in Plaintiff's possession—is indicative of its many overall facial defects.

---

[6] An "artificial" voice is exactly what it sounds like—the voice of a person that does not exist (*e.g.*, artificial intelligence or a "soundboard")—that is used to interact with the called party. *See also Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1263 (D.C. Cir. 2018) (discussing common forms of artificial voice technology). In contrast, a "prerecorded" voice is far less advanced and is typically a live person making an audio recording in advance of the call, such that there is no interaction with the recipient.

For another, even if the Court takes these wholly conclusory allegations as true (and it should not), they are insufficient to plausibly state a claim under Section 227(b) of the TCPA given the weight of applicable federal authority on this point cited herein. At best, Plaintiff merely uses some buzzwords from case law and refers to some messages as "generic" and points to short "pauses" (Dkt. 35, ¶¶ 35, 38, 40, 44), which courts have found insufficient to state such a claim alone as noted above (*see Andersen*, *Moffet*, and *Hicks*, *supra*), but still critically omits other important contextual details. For example, Plaintiff still does not indicate in her FAC whether she answered any calls or if she just received a voicemail that was "delivered" to her phone somehow, such that she could have determined whether it was truly an artificial or prerecorded voice or someone reading a script—*e.g.*, the caller failed to alter their tone of voice in interacting with her or was non-responsive to her questions. This continuing omission is telling because, in a live telephone interaction (unlike a voicemail message where someone may have been reading from a script), it might be possible to discern whether the caller was live or a "robot" since no actual conversation can occur in the latter. *See, e.g.*, *Metzler*, *supra* (dismissing on this basis). Plaintiff also does not describe how the voices **sounded**—that is, beyond the "unnatural cadence" of one speaker for one message and that the voice pronounced "Eleanora" in a different tone of voice than the rest of the message (Dkt. 35, ¶ 40), which Plaintiff associates with a live person and could simply be reflective of him reading from a script too, as discussed below.

Plaintiff otherwise pleads nothing about the "tenor, nature, or circumstances" of the calls suggesting any voice she heard was "prerecorded" or "artificial" and not live, such as that she received other calls using the same voice or that others did, which might also support such a claim if pled. *Cf. Blair v. Assurance IQ LLC*, 2023 WL 6622415, at *3 (W.D. Wash. Oct. 11, 2023) (declining to dismiss where plaintiff received multiple calls with the same message). Rather, according to Plaintiff, each message had completely different content and was left by a different person. *See* Dkt. 35, ¶¶ 31–45. Indeed, Plaintiff admits that the first alleged call on January 10 was a

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW

"live call." *Id.*, ¶ 33. There is no pled basis to infer that the others were any different.

At best, Plaintiff alleges, as to only <u>one</u> of the subject messages (on August 8, 2024, referencing "Micah Greenberg"), that "the unnatural cadence of the voicemail made clear that the voicemail was a ***prerecorded and/or an artificial voice***." *Id.*, ¶ 40 (emphasis added). The problem with this allegation, beyond it being wholly conclusory and saying nothing about the <u>other</u> subject messages, is two fold. First, in the very next paragraph, Plaintiff indicates that Mr. Greenberg is a real live person (like the other alleged callers). *Id.* ¶ 42. She cannot have it both ways. If Mr. Greenberg or the other callers are real people, as alleged, that automatically rules out an "artificial" voice. And again, Plaintiff does not allege she answered the calls and tried to interact with the callers, such that she could tell whether any voice used was truly "prerecorded" or just a caller reading from a script. Any person reading from a script might leave a voicemail with a somewhat "unnatural cadence" or have a monotone voice, which is the whole point of a script—uniformity. Second, as noted above, the terms "artificial" and "prerecorded" are not synonymous under the TCPA and involve vastly different forms of technology. That Plaintiff's FAC conflates these terms even after amending demonstrates how Plaintiff is merely throwing darts at a proverbial dartboard here, not pleading actual facts in accord with *Iqbal*/*Twombly*.

The purported lack of "background noise" for some, but not all, of the alleged messages (*see* Dkt. 35, ¶¶ 35, 38, 44) is a red herring. Inferring that a voicemail message was "prerecorded" simply because a person was in a quiet room when they called is an exercise in inferential gymnastics and would be patently unreasonable.

All told, the FAC critically omits necessary contextual "factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used" here. *Andersen*, 2024 WL 3762098, at *4. As one federal court aptly noted when dismissing a similarly-defective complaint, "this kind of information should be available to plaintiffs bringing TCPA claims" and it must be well-pled to support such a claim. *Davis*, 2024 WL 4896587, at *2. But "[w]ithout further specifics, Plaintiff's

allegation [that the messages at issue were prerecorded] is conclusory," and thus Count I should be dismissed under Rule 12(b)(6). *Rahimian*, 2022 WL 798371, at \*3.

### III.    Count II of the FAC Should Also Be Dismissed Because Plaintiff Fails to Plead Facts Supporting Certain Essential Elements of a TCPA DNC Claim.

Count II should be also dismissed because Plaintiff's FAC omits sufficient non-conclusory facts supporting a key element of a claim under Section 227(c) of the TCPA, which can only be invoked by a "residential telephone subscriber." 47 C.F.R. § 64.1200(c)(2). *See also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers....'") (quoting S. Rep. No. 102-178, at 1 (1991)).

In applying federal pleading standards in TCPA cases, federal courts have widely recognized that plaintiffs bringing TCPA DNC claims must allege sufficient non-conclusory facts showing the subject phone number (*i.e.*, the number at which they received the alleged calls) is ***actually used*** for "residential" purposes, or face dismissal on this basis under Rule 12(b)(6). *See, e.g.*, *Cunningham v. Caribbean Cruise Lines, Inc.*, 2016 WL 7494871, at \*2 (S.D. Fla. Dec. 29, 2016); *Hicks*, 2020 WL 9261758, at \*5; *Smith v. Vision Solar LLC*, 2020 WL 5632653, at \*3 (E.D. Pa. Sept. 21, 2020); *Cunningham v. Politi*, 2019 WL 2519568, at \*4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*, 2019 WL 2524736 (June 19, 2019); *Cunningham v. McDonald*, 2018 WL 6737418, at \*2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL 6198417 (Nov. 28, 2018); *Kemen v. Cincinnati Bell Tel. Co., Inc.*, 2023 WL 361136, at \*5 (S.D. Ohio Jan. 23, 2023); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at \*4 (E.D.N.Y. Feb. 22, 2023); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at \*4 (all dismissing DNC claims on this basis). Of course, just parroting the statutory text or case law does not meet federal pleading standards, nor will it suffice to avoid dismissal here, either. *See, e.g.*, *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at \*2 (W.D. Va. July 25, 2018) (dismissing similar TCPA claim applying to "residential" lines, noting the plaintiff's characterizations that her number

is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute" and thus need to be accepted as true under Rule 12(b)(6))[7].

Applying these established legal maxims in this case further warrants dismissal of Count II of the FAC. At most, Plaintiff still merely concludes that she uses the subject phone number "***primarily*** for personal purposes, such as communicating with friends and family members" and states that the bill for it is "issued in her name, and not the name of a business." Dkt. 35, ¶¶ 19, 20 (emphasis added). Such bald allegations are insufficient to state a plausible claim under Section 227(c) for several reasons.

For one, Plaintiff is obviously just parroting the statute and/or applicable case law here, which does not comply with federal pleadings standards, instead of pleading actual facts that would support an inference that her cell number is actually used for "residential" purposes as is required. *See Morgan*, 2018 WL 3580775, at *2.

For another, courts have found "personal" use of a number is not synonymous with "residential" use under the TCPA, and that such bald allegations are insufficient to plead the essential "residential telephone subscriber" element of a TCPA DNC claim without more. *See, e.g.*, *Hicks*, 2020 WL 9261758, at *5 (dismissing DNC claim, where plaintiff concluded his cell number was "not associated with a business and is for personal use"); *Rogers*, 2023 WL 2646468, at *4 (alleged "personal" use of the subject number deemed insufficient, and noting that "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers are for residential use"); *Mattson v. Quicken Loans Inc.*, 2019 WL 7630856, at *6 (D. Or. Nov. 7, 2019) ("[U]se of the subject number for personal calls does not automatically transform it into a residential line for purposes of the TCPA."). A number "primarily" used for "personal" purposes suggests it ***also*** could

---

[7] Courts have also found whether someone qualifies as a "residential" subscriber for a DNC claim generally depends on certain conditions, including for example that the subject number "is the primary means of reaching the individual at their residence— that is, there is **no other landline or phone at their residence which is instead the primary means of reaching them**" at their residence. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FAC, CASE NO. 2:25-CV-03454-WLH-JC

be used for business and thus not be residential. *See, e.g.*, *Gillam*, 2023 WL 2163775, at *4 (allegations "cell phone number was not 'associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use'" insufficient).

Moreover, Plaintiff does not allege any facts suggesting that the number at issue is the **primary** means of reaching her at her **residence**, let alone that there is **no landline or other phone at her residence** that is the primary means of reaching her there. *See, e.g.*, *Mantha*, 2022 WL 325722, at *6. Like the *Rogers* court noted, *supra*, such facts are surely within Plaintiff's knowledge and could easily be pled if they exist. That Plaintiff failed to plead them here is both telling and further fatal to Count II.

## IV.    The FAC Should Be Dismissed With Prejudice.

Lastly, as one district judge in this Circuit noted in a TCPA case, "Plaintiff already has amended" her original pleading "in an attempt to remedy the precise infirmit[ies] at issue [in this Motion], but failed to do so"; thus, any "further amendment would be futile" and dismissal with prejudice is appropriate. *Jovanovic v. SRP Invs. LLC*, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). Here, Plaintiff submitted her FAC in response to City First's previous dispositive motion, outlining all the same fatal pleading defects in her original complaint as discussed above, but she did nothing to cure those defects. *See generally* Dkt. 21. If she had any actual facts (beyond mere speculation) that she could plausibly allege to bring her pleading into full compliance with federal pleading standards, she could (and indeed should) have pled them by now. That she did not leads to one conclusion: those facts do not exist and thus amendment would be futile. Therefore, the entire FAC should be dismissed with prejudice.

## CONCLUSION

For all the reasons above, the Court should enter an order dismissing Plaintiff's FAC with prejudice, along with granting City First all other just and proper relief.

1   Dated: October 31, 2025               Respectfully submitted,

2                                   **MANATT, PHELPS & PHILLIPS, LLP**

3                                 By: *_/s/ John W. McGuinness_*

4                                    John W. McGuinness

5                                    2049 Century Park East
                                       Los Angeles, California 90067
                                       E-mail: JMcGuinness@manatt.com

6                                    Tel.: (202) 585-6540

7                                    *Counsel for Defendant*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: November 3, 2025                     Respectfully submitted,

                                            By: */s/ Patrice S. Ruane*
                                            Patrice S. Ruane